# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7315 | **DATE** | February 19, 2003 |
| **CASE TITLE** | *Western United Life Assurance v. Fifth Third Bank* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Fifth Third's motion to dismiss [10-1] is granted. Specifically, Count II (common law fraud) and III (conspiracy to defraud) are dismissed without prejudice. Western United may file an amended complaint, consistent with Rule 11 and this order, by no later than March 10, 2003. Failure to do so will cause the dismissals to convert to dismissals with prejudice. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 21 2003 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 21 |
| | Copy to judge/magistrate judge. | | | |
| RTS | courtroom deputy's initials | 03 FEB 21 AM 10:21 FILED TO | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WESTERN UNITED LIFE ASSURANCE COMPANY, <br> Plaintiff, <br><br> v. <br><br> FIFTH THIRD BANK, SERFIN TRUST, LLC, and SCOTT SERFLING, <br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) | 02 C 7315 |

DOCKETED
FEB 2 1 2003

## MEMORANDUM AND ORDER

This case arises out of a series of transactions relating to the failed development of a Ford dealership in Gurnee, Illinois. Plaintiff Western United Life Assurance Company is an insurance company engaged in the business of making commercial loans. Western United alleges that defendant Scott Serfling and defendant Fifth Third Bank conspired to fraudulently induce it to lend $11.75 million to Serfling and defendant the Serfin Trust to repay a debt owed to Fifth Third. According to Western United, Fifth Third knew that making this loan was an absolutely terrible idea because, among other things, the loan was under-collateralized and would never be repaid and Serfling was a convicted felon who had fraudulently diverted proceeds from a prior loan. Fifth Third Bank seeks to dismiss Count II (common law fraud) and III (conspiracy to defraud) of the amended complaint. For the following reasons, Fifth Third's motion to dismiss is granted.

## I. Background

The following facts are drawn from the amended complaint. In 2000, Fifth Third agreed to finance the construction of a Ford dealership in Gurnee, Illinois and thus loaned Serfling and others over $10 million. Fifth Third restricted Serfling's use of the loan proceeds to the

construction of the dealership. It also secured the loan with a mortgage on the parcel of real estate where the dealership was to be located as well as an assignment of rents under a lease executed by Ford Motor Credit Company. The rent payments were meant to be sufficient to service the loan.

By the summer of 2001, Fifth Third learned that Serfling was spending portions of the loan money on things other than the dealership. It also learned that Serfling had previously been convicted of fraud and had been incarcerated. In August of 2001, Ford learned that Serfling had diverted loan proceeds and thus advised First Third that it would not honor Fifth Third's request to increase the lease payments to cover the debt service on the diverted loan proceeds.

This meant that Fifth Third would increase its exposure if it loaned additional monies knowing that the lease would no longer be enough to service the debt. Thus, Fifth Third instituted foreclosure proceedings in the Circuit Court of Lake County seeking to foreclose on its mortgages. Ford notified Fifth Third that it intended to sell all of the collateral at the site, revoked permission to use Ford trademarks there, and terminated the lease.

At this point, the parties' recitation of events begins to markedly diverge. Because a motion to dismiss is before the court, the court emphasizes that it must accept Western United's version of the facts. At this point in the proceedings, Fifth Third's loan was undercollateralized and loan proceeds had been diverted by a convicted felon. Thus, Serfling and Fifth Third agreed that Serfling would attempt to get a new loan to pay off the majority of the Fifth Third loan. They also agreed that, in order to get another lender make this loan, they would need to convince the new lender that Ford still had a lease and that the lease payments were enough to service the

new loan. In exchange for Serfling's agreement to participate in this scheme, First Third released Serfling from all personal liability on the First Third loan.

Serfling, through his agents, told Western United that Ford had agreed to lease the Ford dealership for $125,000/month and that the property had been appraised for well over $15 million dollars. The court assumes that there was an actual physical lease agreement, as Western United also alleges that Fifth Third knew that the lease was forged but that Western United could not have reasonably known this information.

Subsequently, John Byers, an agent of Western United, spoke with Fifth Third's attorney, Scott Kenig. Although he knew that Ford had disclaimed any interest in the dealership, Kenig stated that Ford had offered to purchase the property and that if the Western United deal didn't work out, Fifth Third would sell directly to Ford. Fifth Third's Assistant Vice-President, James Barker, also told Byers that the Fifth Third loan was likely to result in a loss.[1]

Western United closed the loan. Due to the representations and omissions of Serfling, Fifth Third, and Fifth Third's attorneys and agents, Western United did not know that: (1) the amount of the loan exceeded the value of the property and improvements; (2) the $125,000/month lease with Ford was a forgery; (3) Ford had disclaimed all interest in the property; (4) Serfling had repeatedly violated covenants in the construction loan agreement; (5) Serfling was a convicted felon; and (6) Serfling had fraudulently diverted loan proceeds for his own use. Western United did not receive any payments on the loan, and lost over $11,750,000.00.

---

[1] This allegation is at odds with Western United Life's position that no one at Fifth Third ever told it that the loan was a potential sinkhole. Nevertheless, this allegation is repeated in Western United's pleadings so the court includes it in the interests of completeness.

Western United filed a three count complaint invoking diversity jurisdiction. Counts I and II allege common law fraud against, respectively, Serfling and Fifth Third Bank. Count III, conspiracy to defraud, seeks relief from Fifth Third Bank although it also mentions Serfling. First Third seeks to dismiss Counts II and III for failure to state a claim for which relief may be granted.

II. **Discussion**

A. **Standard on 12(b)(6) Motion to Dismiss**

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992); *Gillman v. Burlington N. R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kunik v. Racine County, Wis.*, 946 F.2d 1574, 1579 (7th Cir. 1991), citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

The court will accept all well-pled factual allegations in the complaint as true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n.2 (1977). In addition, the court will construe the complaint liberally and will view the allegations in the light most favorable to the non-moving party. *Craigs, Inc. v. General Electric Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993). However, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).

### B. Common Law Fraud — Fifth Third Bank (Count II)

Fifth Third claims that Western United's fraud claim against it must fail because: (1) the allegations about the forgery are made "upon information and belief" and, in any event, Fifth Third did not have a duty to disclose information to Western United; (2) the complaint fails to allege that it would have been impossible for Western United to discover the likely future problems with the loan; (3) any alleged justifiable reliance by Western United was unreasonable as a matter of law because Western United is sophisticated and failed to act with the requisite vigilance; (4) Fifth Third did not have a duty to disclose information about Serflin's criminal record; and (5) to the extent that any statements referred to future occurrences, they are not actionable. The court's analysis begins and ends with Fifth Third's first argument.

Generally, a plaintiff must only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). However, Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff must state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

Allegations based on information and belief usually do not satisfy the particularity requirement in Rule 9(b). 5A C. Wright and A. Miller, *Federal Practice and Procedure* § 1298 (2d ed. 1990). Where the matters alleged are within the opposing parties' knowledge, however, less detail is required. *Id.*; *Uni\*quality, Inc. v. Infotronx, Inc.*, 974 F.2d at 923. Thus, a plaintiff need not plead facts underlying allegations made "on information and belief" when those facts

are in the defendants' exclusive possession. Such a requirement would close the courthouse door to plaintiffs by requiring them to plead facts that they, by definition, could not know in order to state a claim. On the other hand, even when facts are "inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions," a claim of fraud "upon information and belief" is insufficient. *Uni\*quality, Inc. v. Infotronx, Inc.*, 974 F.2d at 924; *United States ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142, 146 (N.D. Ill. 1993) (claims based "upon information and belief" must be supported with 'specific facts supporting a strong inference of fraud").

Here, the complaint contains numerous allegations made upon information and belief. Among other things, Western United alleges, upon information and belief, that: (1) Serfling and Fifth Third agreed that Serfling would obtain a loan from a new lender to pay off the Fifth Third loan; (2) Serfling and Fifth Third agreed to represent that Ford was continuing to lease the property and that the lease payments were enough to support the loan; (3) Fifth Third knew that the Ford lease was a forgery; and (4) Fifth Third provided a forged insurance certificate covering the property to ensure that the Western United loan closed. These allegations are at the heart of Western United's fraud claims: without these allegations, the only conclusion that the allegations in the complaint support is that Western United made a really bad loan. If that is the case, Fifth Third cannot, of course, be held responsible for Western United's decision to make the loan.

So, are these key allegations specific enough to satisfy Rule 9(b)? It is true that they all center around facts uniquely within Fifth Third's knowledge. Nevertheless, as noted above, a plaintiff who alleges fraud upon information and belief must reference specific grounds for its suspicions. The court has carefully studied the amended complaint and finds that, in essence, it stems from Western United's belief that Fifth Third and Serfling colluded to get Western United

to issue a substantial loan and that Fifth Third knew about the allegedly forged documents. The underlying theory seems to be that Fifth Third knew that it would not be paid back unless it joined up with Serflin to get some hapless lender to issue a bad loan to Serflin so Serflin could get more money to pay off Fifth Third.

This theory, while potentially appealing to the drafter of a novel or screenplay about the downfall of corporate America, is not enough to state a claim for fraud. While the complaint contains extensive factual allegations, none of those allegations provide specific information supporting the key allegations about the purported fraud. The lack of any supporting facts relating to the critical allegations listed above means that Western United has failed to carry its burden of pleading "specific facts supporting a strong inference of fraud." *See United States ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. at 146. Accordingly, its fraud claim against Fifth Third must fail.

### C. Conspiracy to Defraud — Fifth Third Bank (Count III)

Fifth Third contends that the failure of Western United's fraud claim mean that its conspiracy to defraud claim must also fail. Alternatively, it asserts that the complaint fails to allege that Fifth Third itself participated in the purported conspiracy to induce Western United to make the loan, and fails to provide necessary details about the nature of the conspiracy and Fifth Third's role in the conspiracy. Because Western United's conspiracy to defraud claim requires it to successfully plead that the Fifth Third defrauded it and Western United has failed to state a viable fraud claim against Fifth Third, the conspiracy to defraud claim must also be dismissed. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 2001).

### III. Conclusion

Fifth Third's motion to dismiss [10-1] is granted. Specifically, Count II (common law fraud) and III (conspiracy to defraud) are dismissed without prejudice. Western United may file an amended complaint, consistent with Rule 11 and this order, by no later than March 10, 2003. Failure to do so will cause the dismissals to convert to dismissals with prejudice.

DATE: 2-19-03

Blanche M. Manning
United States District Court Judge

02cv7315.md