Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7315 | **DATE** | 11/10/2004 |
| **CASE TITLE** | Western United Life Assurance Co. vs. Fifth Third Bank, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons stated in the attached Memorandum Opinion and Order, defendant's motion to compel is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | 4 number of notices | |
| ✓ | Notices mailed by judge's staff. | | | **NOV 1 2 2004** date docketed | |
| | Notified counsel by telephone. | | | | 79 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 11/10/2004 | |
| | | courtroom | 2004 NOV 10 PM 4:43 | date mailed notice | |
| | hmb | deputy's initials | | hmb | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
NOV 1 2 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WESTERN UNITED LIFE ASSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | No. 02 C 7315 |
| FIFTH THIRD BANK; SERFIN TRUST, LLC; and SCOTT SERFLING, | ) ) ) ) | Nan R. Nolan, Magistrate Judge |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Fifth Third Bank ("Fifth Third") moves this court to compel Dan Geittman to re-appear for his deposition and provide sworn answers to certain questions he previously refused to answer on August 17, 2004.

### I. BACKGROUND

This case concerns the financial fallout from a failed plan to develop a Ford dealership in Gurnee, Illinois.[1] According to the allegations of Western United Life Insurance Company ("Western"), Fifth Third was the original source of financing on the project in 2000, and loaned Scott Serfling – a co-defendant – and others over $10 million. Serfling allegedly diverted the proceeds of that loan, however, and Ford

---

[1] The court draws its narrative of the background of this motion from the allegations in Western's *Third Amended Complaint*. The court accepts these allegations only for the limited purposes of ruling on this motion, and does so advisedly insofar as Western's three previous complaints have been dismissed, in whole or in part, due to various defects.

79

disavowed any interest in the project. Fifth Third learned of this trouble in the summer of 2001 and, in order to avoid losing a substantial portion of the value of the loan, Fifth Third purportedly devised an exit strategy involving Western. According to Western, in early 2002, Serfling and Fifth Third, through its attorney, Scott Kenig, made certain misrepresentations to Western which induced it to lend the Serfin Trust – another co-defendant – nearly $12 million. Among these misrepresentations was the existence of a lease agreement from Ford, which was apparently a forgery. Western filed suit in October of 2002, charging both Fifth Third and Serfling with various fraudulent misrepresentations in connection with the loan.

This discovery dispute concerns the Rule 30(b)(6)[2] deposition of Dan Geittman on August 17, 2004. An ex-employee of Western who was involved in underwriting the loan, Mr. Geittman testified as a corporate representative regarding various subjects including Western's belief that Fifth Third defrauded it in connection with the Serfin loan, and

---

[2] Fed.R.Civ.P. 30(b)(6) provides:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

2

Western's due diligence and underwriting in connection with that loan. As part of his investigation into these subjects, Mr. Geittman testified that he reviewed the transcript of John Byers' deposition and spoke with him over the phone. Mr. Byers is a Western employee who was a loan officer on the loan and the initial contact in the loan process. During the deposition, Western's attorney, Adam Smedstad, instructed Mr. Geittman not to testify as to a conversation among himself, Mr. Smedstad, and Mr. Byers. Mr. Smedstad asserted that those communications were protected by the attorney-client privilege. Fifth Third's counsel, Alan Statman, took issue with this and contended that the privilege had been waived because Mr. Smedstad had introduced testimony regarding those conversations during his examination of Mr. Geittman. The attorneys were unable to resolve the issue without assistance, and this motion ensued.

The parties agree that the discussion among Mr. Smedstad, Mr. Geittman, and Mr. Byers in preparation for Mr. Geittman's deposition was subject to the attorney-client privilege. *(Fifth Third's Motion to Compel*, at 3; *Western's Opposition to Fifth Third's Motion to Compel*, at 5). The parties disagree as to whether the following exchange between Mr. Smedstad and Mr. Geittman waived the privilege as to those communications:

> Mr. Smedstad: Did you talk to Mr. Byers about conversations he had with Mr. Kenig and Mr. Barker?
>
> Mr. Geittman: Yes

> Mr. Smedstad: And do you recall – well, did Mr. Byers tell you that in March of 2002 during a conversation with Mr. Kenig that Mr. Kenig appeared to be conversant with the terms of the Ford lease?
>
> Mr. Statman: Objection, leading.
>
> Mr. Smedstad: It doesn't suggest an answer. Go ahead and answer.
>
> Mr. Geittman: Yes.

(*Fifth Third's Motion to Compel*, Ex. B, Dep. of Geittman, at 306-07). Thereafter, Fifth Third's counsel, Mr. Statman, cross-examined Mr. Geittman regarding the conversation, and Mr. Smedstad interposed an objection based on attorney-client privilege:

> Mr. Statman: Now, when you were talking to Mr. Byers about all these things getting prepared for today, was your counsel present?
>
> Mr. Geittman: Yes.
>
> Mr. Statman: What else did the three of you talk about together?
>
> Mr. Smedstad: I'm going to instruct him not to answer.
>
> Mr. Statman: You waived that.
>
> Mr. Smedstad: I represent Mr. Byers. I represent the witness.
>
> Mr. Statman: And you asked what conversations occurred between he and Byers in your presence during the preparation for this deposition.
>
> Mr. Smedstad: That's fine.
>
> Mr. Statman: And that would be a waiver.

(*Fifth Third's Motion to Compel*, Ex. B, Dep. of Geittman, at 325). Mr. Smedstad then allowed that "he would be happy" to let Mr. Geittman testify as to his conversation with

4

Mr. Byers. Mr. Statman, however, bluntly refused, and attempted to return to his line of questioning:

> Mr. Statman: No. I would like to know what you and Mr. Byers and Mr. Smedstad talked about now that he's waived the privilege.

(*Fifth Third's Motion to Compel*, Ex. B, Dep. of Geittman, at 325-26). Mr. Smedstad again objected, but reiterated that Mr. Statman was free to question Mr. Geittman on conversations he had with Mr. Byers. The exchange became a bit more heated, and Mr. Statman indicated he would be perfectly willing to present the issue to the judge. Stopping short of that for the moment, the two attorneys continued their debate, and it became clear that they were uncertain just what the issue really was:

> Mr. Smedstad: Just so the record is clear, you can ask him about his conversations with Mr. Byers.

> Mr. Statman: No. I'm interested since he's waived – since he and Mr. Byers waived that privilege by allowing that information discussed with you together in a little three-way conversation prior to this deposition today. I'm interested in the totality of the conversations and not just what he and Mr. Byers talked about.

(*Fifth Third's Motion to Compel*, Ex. B, Dep. of Geittman, at 326-27). When the argument showed no sign of relenting, Mr. Smedstad, once more, attempted a compromise:

> Mr. Smedstad: (to Geittman) Go ahead and tell him what we talked about.

> Mr. Statman: With you.

5

> Mr. Smedstad: With respect to the conversations that I had – the three of us had, Byers, me and [Geittman].

(*Fifth Third's Motion to Compel*, Ex. B, Dep. of Geittman, at 327). Mr. Statman was still not satisfied, however, and warned that his questioning would go past that subject as a result of what he maintained had been a waiver of the attorney-client privilege. (*Fifth Third's Motion to Compel*, Ex. B, Dep. of Geittman, at 327). Mr. Smedstad refused to allow that much latitude. The attorneys quarreled, the deposition broke down, and Mr. Statman did, as he had threatened, "take [it] up with the judge."(*Fifth Third's Motion to Compel*, Ex. B, Dep. of Geittman, at 328-29).

According to Fifth Third, Mr. Smedstad elicited and introduced certain allegedly privileged conversations – "the Byers' Conversations" – thereby effecting a "partial waiver" of the attorney-client privilege. (*Fifth Third's Motion to Compel*, at 7). As a result, Western argues it is entitled to explore the entire day of Mr. Geittman's preparation. More specifically, Fifth Third plans to elicit testimony regarding "the Byers' Conversations," including:

> why they took place, how long they occurred, the purposes of the Byers' Conversations, was Byers's [sic] coached to say certain things during the Byers Conversations; did counsel put words in Byers' mouth, did Byers and Geittman argue during the Byers' Conversations, did counsel put words in Geittman's mouth, and did they agree on all subjects. It is also entitled to explore what subsequent or prior role the Byers' conversations played in Mr. Mr. Smedstad's preparation of Mr. Geittman. This would include a line of inquiry into how long Mr. Byers was prepared, and what communications took place between Mr. Geittman and Byers before and after the Byers

6

Conversations occurred, in light of the subjects covered in the Byers Conversations.

(*Fifth Third's Motion to Compel*, at 8-9). Therefore, Fifth Third seeks an order compelling Mr. Geittman to re-appear for his deposition and answer all questions related in any way to: "the Byers' Conversations," communications between Mr. Smedstad and Mr. Geittman on August 16, 2003 in which any subject raised in "the Byers' Conversations" was discussed, Mr. Geittman's recollections of communications between Mr. Smedstad and Mr. Byers during "the Byers' Conversations," and what role "the Byers' Conversations" played in preparing Mr. Geittman for his August 17, 2004 deposition.

## II. ANALYSIS

Relying on *Graco Children's Products, Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, No. 95 C 1303, 1995 WL 360590, (N.D.Ill. June 13, 1995), Fifth Third would argues that Western waived the attorney-client through "partial disclosure" or "partial waiver." (*Fifth Third's Motion to Compel*, at 7-8). "Partial waiver" may be found where disclosure of a part of a privileged document or set of such documents – or, as here, part of a privileged communication – is argued to waive privilege in the rest of it. *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1127 (7th Cir. 1997) (*citing Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 n.7 (3rd Cir. 1991)). In the first instance, then, there must be a disclosure of part of a privileged

communication; if no privileged information is disclosed, there can be no "partial waiver." *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1099 (7th Cir. 1987). The problem with Fifth Third's argument is that it does not identify any privileged information that Western supposedly disclosed.

The attorney-client privilege protects confidential communications made by a client to his lawyer "[w]here legal advice of any kind is sought ... from a professional legal advisor in his capacity as such." *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) (citations omitted). The privilege generally attaches only to statements made by the client, but also protects statements made by the lawyer to the client where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client. *Id.* Fifth Third contends that the disclosure of privileged information occurred when Mr. Geittman indicated, in response to Mr. Smedstad's questioning, that he had talked to Byers about conversations Byers had with Kenig, and that Byers had told him that Kenig appeared to be familiar with the Ford lease. In arguing that this constituted a disclosure of privileged information, Fifth Third fails to identify what the privileged information is or how the exchange in question reflects legal advice.³

---

³ The only other portions of Mr. Geittman's testimony to which Fifth Third refers are where Mr. Geittman states that he met with Mr. Smedstad the day before the deposition (*Fifth Third's Motion to Compel*, Ex. B, Dep. of Geittman, at 6-7), that he called Byers that day to review Byers' deposition (*Id.*, at 29), and that read Byers' deposition. (*Id.*, at 29) (*Fifth
(continued...)

8

Obviously, discussions such as the one at issue here are going to occur in the course of preparing a Rule 30(b)(6) deponent. *PPM Finance, Inc. v. Norandal USA, Inc.*, 297 F.Supp.2d 1072, 1086 (N.D.Ill 2004) (collected cases on the obligation to prepare a 30(b)(6) deponent). The deposition preparation will likely involve research into areas the deponent may not be familiar with, which might require conversations with both attorneys and non-attorneys. The exchange between Mr. Smedstad and Mr. Geittman that occurred at the deposition – the exchange which Fifth Third deems a waiver of the attorney-client privilege – merely confirms that such a conversation occurred, and rather tersely suggests what the topic of that discussion was. Finding a partial disclosure and resultant waiver based on this exchange would be tantamount to finding a waiver based on the mention and cursory description of a document in a privilege log.

There are times in depositions when zealousness – or perhaps over-zealousness – on a client's behalf can be counterproductive. In this case, zealousness appears to have influenced Fifth Third's counsel to refuse the opportunity to delve into subject matter at Mr. Geittman's deposition that he now seeks to explore in this motion. Review of the deposition transcript shows that, on at least three occasions during the less than cordial

---

[3](...continued)
*Third's Motion to Compel*, at 3). None of the this testimony discloses privileged information, legal advice, or even specifically indicates that Mr. Smedstad participated in a conversation with Mr. Byers and Mr. Geittman.

exchange between Mr. Statman and Mr. Smedstad, Mr. Smedstad invited Mr. Statman to pursue his line of questioning:

> Mr. Smedstad: I'm happy to let him talk to you about what he talked to Mr. Byers about.
>
> Mr. Statman: No. I would like to know what you and Mr. Byers talked about now that he's waived the privilege.

(*Fifth Third's Motion to Compel*, Ex. B, Dep. of Geittman. at 325-26).

> Mr. Smedstad: Just so the record is clear, you can ask him about his conversations with Mr. Byers.
>
> Mr. Statman: No. . . . I'm interested in the totality of the conversations and not just what he and Mr. Byers talked about
>
> \* \* \*
>
> Mr. Smedstad: Go ahead and tell him what we talked about.
>
> Mr. Statman: With you.
>
> Mr. Smedstad: With respect to the conversations that I had – the three of us had, Byers, me, and the witness.
>
> Mr. Statman: Well, it's going to go on from there because you waived that by bringing out this testimony.
>
> \* \* \*
>
> My position is that by you participating in the conversations between these two gentlemen, Byers and Geittman, and then having that testimony brought out in your own examination of Mr. Geittman today, you waived the privilege as it relates to the entirety of your day yesterday.

(*Fifth Third's Motion to Compel*, Ex. B, Dep. of Geittman, at 326-28). Thus, at the Geittman deposition, Mr. Smedstad did not block Mr. Statman's inquiry into either

conversations between Mr. Geittman and Byers, or "conversations . . . the three of [them] had, Byers, [Mr. Smedstad] and the witness."

Unfortunately, Mr. Statman was not satisfied; he wanted carte blanche on any communications that occurred the entire day Mr. Smedstad spent preparing Mr. Geittman for his deposition. The court does not imagine that Mr. Smedstad, in the wake of his offer to Mr. Statman, would have allowed Mr. Statman to interrogate Mr. Geittman unabated by objection. Certainly, some of the communications that day were privileged and some were not, and a blanket claim of attorney-client privilege covering the entire day would be inappropriate. *U.S. v. Lawless*, 709 F.2d 485, 487 (7th Cir 1983) (claim of privilege must be made and sustained on a question-by-question basis; a blanket claim of privilege is unacceptable). But Fifth Third's version of what occurred – a blanket waiver as a result of a reference to a conversation in which an attorney participated – is similarly inappropriate where no privileged communications were disclosed. Mr. Statman had quite a bit of latitude at the deposition to explore the topics in which he now expresses so dire an interest. At the deposition, he might have dealt with specific objections to specific questions as they arose. Instead, he demanded, as he requests now, an unbridled interrogation of Mr. Geittman as to anything that might have discussed, including legal advice, on the day before the deposition. The court simply cannot grant such a request under these circumstances.

## III. CONCLUSION

For the foregoing reasons, the defendant's motion to compel is denied.

ENTERED: *Nan R Nolan*
NAN R. NOLAN
U.S. MAGISTRATE JUDGE

DATE:

11-10-04